IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAHEEM TURNER<br>183 Wiltshire Lane<br>Warminster, PA 18974 | :<br>:<br>: | CIVIL ACTION |
| | : | NO.: _____ |
| Plaintiff, | :<br>: | |
| v. | :<br>: | |
| DFA DAIRY BRANDS FLUID, LLC<br>880 Allentown Road<br>Lansdale, PA 19446 | :<br>:<br>:<br>: | **JURY TRIAL DEMANDED** |
| Defendant. | :<br>: | |

## CIVIL ACTION COMPLAINT

Raheem Turner (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by DFA Dairy Brands Fluid, LLC (hereinafter referred to as "Defendant") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq*.), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff intends to amend his instant lawsuit to include claims under the PHRA once his administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. DFA Dairy Brands Fluid, LLC is a corporation owned by and serving thousands of family dairy farmer-members across the United States, while marketing members' raw milk and selling milk and derivative products (dairy products, food components, ingredients, and shelf-stable dairy products) to wholesale buyers, with a facility at the above-captioned address.

9. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

11. Plaintiff was employed by Defendant for approximately 2.5 years, from on or about April 19, 2022, until his unlawful termination (discussed further *infra*) on or about October 1, 2024.

12. Plaintiff was employed originally as a Receiver in the Milk Receiving Department working from Defendant's above-captioned Lansdale, Pennsylvania location.

13. At the time of his termination, however, Plaintiff was working as a Blow Mold Operator under the supervision of Third Shift Supervisor, Jonathon Knudsen (Caucasian, hereinafter "Knudsen").

14. Plaintiff is a Black (African American) male.

15. Throughout his employment with Defendant, he was an extremely hard-working employee, who performed his job well, earning praise from management, and without discipline, until he returned from FMLA leave in or about August of 2024, to care for his mother and her serious health conditions.

16. After Plaintiff returned from FMLA leave, Plaintiff fell under the supervision of Knudsen (Caucasian), who began to subject Plaintiff to hostility, animosity, discriminatory and

3

disparate treatment because of his race and/or for reasons associated with his mother's health conditions.

17.   By way of background, in or about March of 2024, Plaintiff applied for and was approved for block FMLA leave for his mother's serious health conditions.

18.   Plaintiff's mother has and continues to suffer from serious health conditions, including but not limited to, cancer and associated conditions/complications.

19.   As a result, Plaintiff's mother, who lives with him, needed assistance with basic hygiene needs, helping to care for his younger family members, and for Plaintiff to accompany her to chemotherapy treatments and doctor appointments.

20.   Throughout Plaintiff's aforementioned FMLA leave, Plaintiff regularly kept in touch with Defendant's management about the status of his leave and anticipated return date.

21.   Plaintiff returned from FMLA leave on or about June 20, 2024.

22.   Several weeks following his return from FMLA leave, Plaintiff's Receiver position was eliminated, despite that there was a less senior Caucasian employee, Joseph Shannon (hereinafter "Shannon") who could have been selected over Plaintiff.

23.   As a result, Plaintiff bid for and requested the ability to be placed in a vacant Cooler position, which he had been lobbying for since his hire.[2]

24.   Plaintiff was interested in the Cooler position as it was a much more physically active position, requiring the regular use of forklifts, with which Plaintiff had more experience and familiarity.

---

[2] Plaintiff had bid on the Cooler position early into his career with Defendant and had been approved but never transferred to the position. Nonetheless, despite that the Cooler position was open in August of 2024, he was denied the position.

4

25. Instead, Plaintiff was placed in the less favorable Blow Mold department – while another Caucasian employee, Michael Renner (hereinafter "Renner") was offered the Cooler position, but declined, and then was terminated.

26. Even though the aforesaid Caucasian employee rejected the position, Plaintiff was still not offered the vacant Cooler position he requested.

27. Plaintiff avers that he was denied the Cooler position and placed in the far less favorable Blow Mold department for being negatively associated with his mother's serious health conditions, for being perceived as being distracted with his mother's health conditions in and outside of work, and for taking FMLA leave for the same.

28. Once he began to work in the Blow Mold department, it was clear that Knudsen favored Caucasian and/or non-black employees, as Plaintiff and other African American employees were subjected to disparate and discriminatory treatment because of their race. By way of example, but not intended to be an exhaustive list, unlike their Caucasian co-workers, Knudsen:

    a. Treated Plaintiff and other Black employees in a rude and demeaning way and regularly talked down to them;

    b. Plaintiff and other Black employees were issued pretextual discipline and or were terminated for manufactured or minor issues by Knudsen and other Caucasian supervisors, while Caucasian and/or non-Black employees were given warnings or minor discipline for the same or far worse infractions;

    c. Knudsen advised Plaintiff more than once that he "makes too much, and needs to work harder," but never made any similar disparaging comments to Plaintiff's Caucasian co-workers; and

    d. Black employees were given less opportunities for promotion and advancement than Caucasian and/or non-Black employees.

29. Plaintiff routinely objected to the discriminatory and disparate treatment that he was being subjected to by Knudsen, both to Knudsen and through Plaintiff's union; however, his concerns were not properly addressed, and Knudsen continued to harass and berate him for no legitimate reasons.

30. On or about September 7, 2024, Plaintiff was placed by Knudsen on a new machine that he had never been trained on.

31. While operating the machine, it jammed, which Plaintiff later discovered happened regularly.

32. Plaintiff, *as he had been advised early in his employment with Defendant*, walked away and took a break, rather than lose his patience and/or a finger.

33. Plaintiff did not have a walkie at the time or any way to contact his supervisor, so he took the brief break, hoping to find a supervisor or manager upon his return.

34. When he returned, however, Knudsen screamed at and berated Plaintiff, unlike his Caucasian co-workers whenever they would experience a jam or machine malfunction.

35. When Plaintiff objected to Knudsen that he had placed Plaintiff on a machine that he had never worked on before without any training and that it was not his fault, Knudsen told Plaintiff that he needed to leave and go home.

36. At that time, Plaintiff contacted his union shop steward to complain about Knudsen's disparate and discriminatory treatment, and his union shop steward advised Plaintiff to wait for him there before leaving.

37. Because Plaintiff continued to stay on the premises and wait for his shop steward (as directed by the same), Knudsen called the police, as if Plaintiff were a criminal, to have him removed.

6

38. When the police and then his shop steward arrived, they informed Plaintiff that he had done nothing wrong but advised Plaintiff to leave, which he did.

39. Notably, Plaintiff had simply objected to Knudsen's discriminatory, condescending, and hostile treatment of him and waited for his shop steward as advised to by the same.

40. Thereafter, on or about September 17, 2024, Plaintiff and other employees had finished their shifts early, at or about 3:30 a.m. to 3:45 a.m., after which they were advised to shut down and turn their machines off.

41. At that point, the only thing that Plaintiff had yet to do was clean up his area and machine. Plaintiff cleaned out his machine and then took his first break of the shift.

42. Plaintiff then went into the breakroom, ate, took a bathroom break and witnessed that another non-Black Employee, Juan (Hispanic, last name unknown, hereinafter "Juan") had been sitting in the break room (upon information and belief for almost 3 hours watching a soccer game).

43. Plaintiff then walked around to other departments (including Receiving) to see if anyone else needed assistance for which he could pitch in, as Defendant had always recommended, but no areas needed assistance.

44. Plaintiff then walked back to his workstation, which had already been cleaned. As a result, Plaintiff walked back to the break room, to see several of his Caucasian and/or non-Black co-workers sitting around waiting for work. Thus, Plaintiff believed that everything had been completed, and clocked out around 5:35 a.m., while his non-Black co-workers were still sitting around doing nothing in the breakroom.

45. However, the following day, Plaintiff was then informed that he was being placed on suspension, pending investigation.

46. Plaintiff was then terminated just two weeks later, on or about October 1, 2024, allegedly for "stealing time," which was untrue as multiple other non-Black individuals were sitting in the breakroom watching television or on their phones waiting for work or for their shifts to end, but were not terminated for the same.

47. Defendant's purported reason for Plaintiff's termination is completely false and pretextual because (1) Plaintiff had been viewed as a stellar employee without a history of discipline prior to taking FMLA leave and being placed under the supervision of Knudsen; (2) Plaintiff never stole any time from Defendant nor misrepresented his hours; rather, on some occasions, as discussed *supra*, Plaintiff and other employees were required to wait in break or other areas while machines were down or if the bottling or other departments had holdups that would then put their department on hold; (3) Defendant had a pattern of terminating Black employees while giving them far less chances and counseling, whereas Caucasian and/or non-Black employees were given multiple counseling events, warnings, and chances before being terminated; (4) Plaintiff was suspended and ultimately terminated only after objecting to Knudsen's unfair treatment towards him because of his race; and (5) Plaintiff was terminated in close proximity to his requesting and/or taking FMLA leave to care for his mother and her serious health conditions.

48. Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, retaliation, denied the Cooler position that he requested and had seniority for, and ultimately terminated for (1) being negatively associated with his mother's serious health conditions; and (2) taking FMLA leave to care for his mother and her serious health conditions.

49. Plaintiff also believes and therefore avers that he was subjected to discrimination, a hostile work environment, retaliation, and ultimately terminated because of (1) his race; and (2) his objections to/complaints of race discrimination.

8

50. Finally, Plaintiff believes and therefore avers that his race was a motivating and/or determinative factor in the termination of his employment with Defendant.

## COUNT I
## Violations of 42 U.S.C. Section 1981
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

51. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52. During Plaintiff's employment with Defendant, he was subjected to discrimination, retaliation, pretextual discipline, and a hostile work environment through disparate treatment as outlined *supra* because of his race.

53. Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but his concerns were ignored.

54. Plaintiff was then terminated for completely pretextual reasons on or about October 1, 2024.

55. Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, and retaliation because of his race and/or his objections to/complaints of race discrimination.

56. Plaintiff also believes and therefore avers that but for his race, he would not have been terminated from his employment by Defendant.

57. These actions as aforesaid constitute violations of Section 1981.

## COUNT II
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

58. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59. During Plaintiff's employment with Defendant, he was subjected to discrimination, retaliation, pretextual discipline, and a hostile work environment through disparate treatment as outlined *supra* because of his race.

60. Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but his concerns were ignored.

61. Plaintiff was then terminated for completely pretextual reasons on or about October 1, 2024.

62. Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, and retaliation because of his race and/or his objections to/complaints of race discrimination.

63. Plaintiff also believes and therefore avers that his race was a motivating and/or determinative factor in the termination of his employment by Defendant.

64. These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

**COUNT III**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Associational Disability Discrimination; and [2] Hostile Work Environment)**

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. Plaintiff's mother suffered from qualifying health conditions under the ADA, including but not limited to cancer and its accompanying complications.

67. Defendant knew of Plaintiff's mother's disabilities at the time of Plaintiff's termination.

68. Plaintiff was terminated by Defendant for completely pretextual and false reasons shortly after requesting and/or utilizing block time off for his mother's medical treatment and doctors' appointments.

69. Upon information and belief, Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, and ultimately terminated by Defendant for being perceived as distracted for dealing with his mother's health problems in and outside of work and/or for other reasons in association with his mother's health problems.

70. These actions as aforesaid constitute violations of the ADA.

## COUNT IV
### Violations of the Family and Medical Leave Act ("FMLA")
**(Interference & Retaliation)**

71. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

73. Plaintiff requested leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

74. Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

75. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

76. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

11

77. Plaintiff was terminated in close proximity to his requests for/utilization of block FMLA leave to care for his mother and her serious health conditions.

78. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; (4) engaging in conduct which discouraged Plaintiff from exercising his FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave; and (5) failing to place Plaintiff into the Cooler position for which he applied and had seniority for following his FMLA leave.

79. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

      D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

      E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

      F.      Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

      Respectfully submitted,

      **KARPF, KARPF & CERUTTI, P.C.**

By: _____
      Ari R. Karpf, Esq. (Attn. No. 91538)
      8 Interplex Drive, Suite 210
      Feasterville-Trevose, PA 19053
      (215) 639-0801
      akarpf@karpf-law.com

Dated: December 1, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Raheem Turner | : | CIVIL ACTION |
| v. | : | |
| DFA Dairy Brands Fluid, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x)

| 12/1/2025 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief *see certification below*
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
TURNER, RAHEEM

**DEFENDANTS**
DFA DAIRY BRANDS FLUID, LLC

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CIVIL RIGHTS**
- [X] 445 Amer. w/Disabilities - Employment

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601); Section 1981 (42USC1981); Title VII (42USC2000)

Brief description of cause:
Violations of the ADA, FMLA, Section 1981, Title VII and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 12/1/2025
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE